**In re Shah M. ALAM & Nuzhat M. Alam, Debtors.**

No. 04–20579.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Dec. 7, 2005.

Blake Owen Brewer, Independence, OH, Debtors.

### *MEMORANDUM OF OPINION AND ORDER*

RANDOLPH BAXTER, Chief Judge.

In this contested matter, Chapter 7 Trustee Richard A. Baumgart ("Trustee") objects to a claim of exemption in a certain Fidelity Account pursuant to Sections 2329.66(A)(6)(e) and 3923.19 of the Ohio Revised Code. Ohio Rev.Code Ann. §§ 2329.66(A)(6)(e) and 3923.19. The

amount claimed as exempt is the approximate sum of $55,456. 99. The Debtors have timely responded. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction of the matter in accordance with 28 U.S.C. § 1334 and General Order No. 84 of this District.

The parties filed Agreed Upon Stipulations. After a review of the record, the following findings and conclusions are made pursuant to Bankruptcy Rule 7052:

Joint Stipulations:

1. Shah M. Alam and Nuzhat M. Alam (the "Debtors") are debtors in this Chapter 7 case, which was commenced on August 17, 2004.

2. The Debtors' scheduled $259,213.55 in general unsecured debt.

3. On February 20, 2005, the Debtors filed Amended Schedules B and C. The Debtors claimed an exemption in "Funds on deposit in Fidelity Account Number 2YA–405612—funds are solely from the resolution of an action against the Debtor's disability insurance carrier, Continental Casualty Company, for failure to pay disability insurance benefits", in the amount of $55,456.99, pursuant to Ohio Revised Code §§ 2329.66(A)(6)(e) and 3923.19.

4. On March 16, 2005, the Trustee filed a timely Objection to the Debtors' Amended Claims of Exemption.

5. Mr. Alam had a voluntary long term disability policy (the "Policy") through Continental Casualty Company of Chicago, Illinois ("CNA").

6. In 1999, Mr. Alam applied, and was approved for, disability benefits from CNA under the Policy. Mr. Alam received $3,432.00 a month under the Policy.

7. In January, 2001, CNA terminated the disability benefits to Mr. Alam.

8. On or about August 2, 2002, the Debtor filed a Complaint with the United States District Court for the Northern District of Ohio, Eastern Division, against CNA, entitled *Shah M. Alam v. Continental Casualty Co. of Chicago, Illinois,* Case Number 1:02CV 1521, in which he sought reinstatement of his long term disability benefits from CNA.

9. On or about May 5, 2003, Mr. Alam settled the lawsuit against CNA, and received gross settlement proceeds in the amount of $115,000.00. After attorney's fees and costs, Mr. Alam received the net amount of $77,022.32, on or about May 20, 2003.

10. The net proceeds from the settlement of the lawsuit against CNA, in the amount of $77,022.32, were deposited into the Charter One Bank joint account of the Debtors, account number xxx–xx6000–2, on May 22, 2003.

11. On or about May 24, 2003, the Debtors withdrew $65,000.00 from their joint checking account with Charter One Bank, account number xxx–xx6000–2, and deposited the $65,000.00 in a Charter One Bank account number xxx–xx5211.

12. On or about September 13, 2003, the Debtors obtained a Charter One Bank Official Check from their Charter One Bank account number xxx–xx5211, in the amount of $60,000.00, made payable to Fidelity Investments. The Official Check was used to open a Fidelity Funds Account with Fidelity Investments (the "Fidelity Account").

13. The funds in the Fidelity Account were initially invested in a Money Market Savings Account. On or about September 23, 2003, the funds in the Fidelity Account were used to purchase three different mutual funds. The Debtors bought and sold various mutual funds

within the Fidelity Account throughout the lifetime of the Fidelity Account.

14. On or about November 11, 2004, the Debtors sold all the mutual funds held in their Fidelity Account and closed the Fidelity Account. The Debtors received a check from Fidelity Investments in the amount of $56,116.74 upon the sale of the mutual funds held in the Fidelity Account.

15. On November 19, 2004, the Debtors deposited the sum of $56,126.74 into their Ohio Savings Bank account number 54135.

16. On or about December 2, 2004, the Debtors opened an account with T.D. Waterhouse, with Check # 2771, in the amount of $1,000.00, from their Ohio Savings Bank account number 54135.

17. The Debtors deposited $50,000.00, via Check # 2775 from their Ohio Savings Bank account number 54135, into the T.D. Waterhouse account, on or about December 9, 2004.

18. The funds in the T.D. Waterhouse account were initially invested in a money market account. On or about December 10, 2004, the Debtors purchased various mutual funds with the funds in the T.D. Waterhouse account. The Debtors bought and sold various mutual funds within the T.D. Waterhouse account throughout the lifetime of the T.D. Waterhouse account.

19. On or about March 30, 2005, the Debtors sold all the mutual funds held in their T.D. Waterhouse account and closed the T.D. Waterhouse account. The Debtors received a check from T.D. Waterhouse in the amount of $48,925.00, upon the sale of the mutual funds held in the T.D. Waterhouse account.

20. Stephen D. Hobt, counsel for the Debtors, is currently holding the sum of $48,925.00 on behalf of the Debtors, representing the Debtors' sale proceeds from the sale of the mutual funds held in the T.D. Waterhouse account.

21. The Trustee's Exhibits Nos. 1 through 23, which were filed with the Court on August 4, 2005, may all be admitted in evidence without any objection by any party.

22. The Debtors' Exhibits A through W, which were filed with the Court on August 4, 2005, may all be admitted in evidence without any objection by any party.

23. On May 22, 2003, the Debtors' Charter One Bank joint account, account number xxx–xx6000–2, held the sum of $43.37.

24. During the period September 14, 2003 through November 10, 2004, the Debtors deposited no funds, other than those derived from the settlement of the lawsuit against CNA, into the Fidelity Account.

25. At all times relevant to the within proceeding, the Debtor, Shah M. Alam, exercised complete exclusive control over the funds derived from the settlement of the lawsuit against CNA.[1]

(Joint Stipulations entered on August 11, 2005).

* *

Prepetition, Debtor Shah Alam was employed as a mechanical engineer and had been so employed for twenty years. From 1993 through 2000, he was employed by Chemstress Consultant Company. He was offered a voluntary long term disability policy through Continental Casualty Company ("CNA"). The policy provided

---

**1.** Items 23 to 25 were part of a supplemental joint stipulations of fact entered on August 22, 2005.

that he would receive approximately sixty percent (60%) of his take home income from the date of a disability until he reached the age of sixty-five, when he would be eligible for a social security annuity.

Debtors allege that Shah Alam experienced severe back problems in the late 1990s. In 1998, he underwent a laminectomy and was diagnosed with multiple sclerosis. In 1999, he applied for disability benefits from CNA and was approved. His claim was allowed in the sum of $3,432.00 per month. In January of 2001, CNA unilaterally terminated the benefits determining that he was not disabled.

On or about August 2, 2002, Shah Alam filed suit against CNA in the federal district court seeking reinstatement of his long term disability benefits from CNA. Subsequently, he settled his action against CNA, receiving a gross settlement award of $115,000.00 and releasing CNA from any further disability insurance liability under the Policy. Of the net sum received ($75,000), he invested $60,000 in the Fidelity account.

Debtors filed their Chapter 7 case on August 17, 2004 and claimed an exemption in the Fidelity account funds in the amount $55,456.99 pursuant to ORC 2329.66(A)(6)(e) and 3923.19. The Trustee objects to a claim of exemption in a Fidelity Account pursuant to ORC § 2329.66(A)(6)(e) and 3923.19 in the approximate sum of $55,456.99. The Trustee contends that the account was purchased with a lump sum payment received by Debtor Shah Alam in settlement of a lawsuit he had against his former long-term disability carrier. The Trustee contends that the funds were not benefits being paid under a policy of sickness and accident insurance nor do the funds constitute a lump sum payment because of a dismemberment or other loss incurred.

The Debtor contends that the subject policy was a group long term disability insurance policy issued by CNA for the benefit of the employees of Chemstress. The policy was clearly a "policy of sickness and accident insurance" as that term is defined in ORC § 3923.01. The action Shah Alam brought against CNA was an action to secure long term disability benefits to which he was entitled. Debtors further contend that co-debtor Shah M. Alam has been determined by the Social Security Administration to be disabled, and his physician has indicated that he is permanently disabled.

\* \* \*

The dispositive issue is whether the subject exemption claim made pursuant to O.R.C. § 2329.66(A)(6)(e) and § 3923.19 is proper.

\* \* \* \*

Federal Rule 4003 provides in pertinent part:

(b) Objecting to a claim of exempt

A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension. Copies of the objections shall be delivered or mailed to the trustee, the person filing the list, and the attorney for that person.

(c) Burden of proof

In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

Fed. R. Bankr.P. 4003(b), (c). A party in interest, has standing to object to a debtor's exemptions, and should object where the exemption is invalid and would deplete the value of the estate available for distribution to the creditors. *In re Luongo,* 259 F.3d 323, 340 (5th Cir.2001). After hearing on notice, the court shall determine the issues presented by the objections. *Linda Munoz v. Manuel Dembs,* 757 F.2d 777, 780 (6th Cir.1985); *In re Feasel,* 277 B.R. 335, 337 (Bankr.N.D.Ohio 2001). Initially this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. *In re Lester,* 141 B.R. 157, 161 (S.D.Ohio 1991). If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *See In re Moneer,* 188 B.R. 25, 28 (Bankr. N.D.Ill.1995); Fed.R.Evid. 301. *In re Carter,* 182 F.3d 1027, 1029 (9th Cir.1999).

 Upon the filing of a timely objection, debtors remain entitled to the presumption that their claims are *prima facie* valid, and it is incumbent upon the objecting parties to rebut this presumption by a preponderance of the evidence. *In re Long,* 260 B.R. 859, 862 (Bankr.S.D.Ohio 2001) *citing In re Hollar,* 79 B.R. 294, 296 (Bankr.S.D.Ohio 1987); *In re Barlock,* 121 B.R. 13, 15 (Bankr.N.D.Ohio.1990); *In re Ciotta,* 222 B.R. 626, 629 (Bankr.C.D.Ca. 1998). As noted by the Court in *Ciotta,* "... A debtor is not required to make an affirmative showing that a claimed exemption is appropriate.... The debtor only needs to characterize, either expressly or impliedly, that the claimed exemption falls within an exempt category...." *See In re Long,* 260 B.R. at 862 *citing In re Ciotta* at 628. Ohio Revised Code § 2329.66 provides, in part:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows (6)(e) The person's interest in the portion of benefits under policies of sickness and accident insurance and in lump sum payments for dismemberment and other losses insured under those policies, as exempted by section 3923.19 of the Revised Code.

Ohio Rev.Code § 2329.66(A)(6)(e). Ohio Revised Code § 3923.19 provides:

The portion of any benefits under all policies of sickness and accident insurance as does not exceed six hundred dollars for each month during any period of disability covered by the policies, is not liable to attachment or other process, or to be taken, appropriated, or applied by any legal or equitable process or by operation of law, either before or after payment of the benefits, to pay any liabilities of the person insured under any such policy. This exemption does not apply if an action is brought to recover for necessaries contracted for during the period of disability, and if the complaint contains a statement to that effect. When a policy provides for a lump sum payment because of a dismemberment or other loss insured, the payment is exempt from execution by the insured's creditors.

Ohio Rev.Code § 3923.19. It is apparent from the joint stipulation of facts that the proceeds which funded the Fidelity Account were derived from Debtor Shah Alam's settlement with Continental Casualty ("Continental") in his lawsuit for disability benefits. The Joint Stipulations clearly reveal that the Debtors made several investments with settlement proceeds postpetition. On or about May 5, 2003, Debtor, Shah Alam settled the lawsuit

against CNA, and received gross settlement proceeds in the amount of $115,000.00. After attorney's fees and costs, he received the net amount of $77,022.32. Such net proceeds were deposited into the Charter One Bank joint account of the Debtors, account number xxx–xx6000–2, on May 22, 2003. On or about May 24, 2003, the Debtors withdrew $65,000.00 from their joint checking account with Charter One Bank, account number xxx–xx6000–2, and deposited the $65,000.00 in a Charter One Bank account number xxx-xx5211.

On or about September 13, 2003, the Debtors issued an official bank check on their Charter One Bank account number xxx-xx5211, in the amount of $60,000.00, made payable to Fidelity Investments. The Official Check was used to open a Fidelity Funds Account with Fidelity Investments (the "Fidelity Account"). The funds in the Fidelity Account were initially invested in a Money Market Savings Account. On or about September 23, 2003, the funds in the Fidelity Account were used to purchase three different mutual funds. The Debtors bought and sold various mutual funds within the Fidelity Account throughout the lifetime of the Fidelity Account.

The Debtors filed for Chapter 7 relief on August 17, 2004. Postpetition, they sold all the mutual funds held in their Fidelity Account and closed the Fidelity Account. The Debtors received a check from Fidelity Investments in the amount of $56,116.74 upon the sale of the mutual funds. On November 19, 2004, the Debtors deposited the sum of $56,126.74 into their Ohio Savings Bank account number 54135. On or about December 2, 2004, the Debtors opened an account with T.D. Waterhouse, with Check # 2771, in the amount of $1,000.00, from their Ohio Savings Bank account number 54135. The Debtors deposited $50,000.00, via Check # 2775 from their Ohio Savings Bank account number 54135, into the T.D. Waterhouse account, on or about December 9, 2004. The funds in the T.D. Waterhouse account were initially invested in a money market account. On or about December 10, 2004, the Debtors purchased various mutual funds with the funds in the T.D. Waterhouse account. The Debtors bought and sold various mutual funds within the T.D. Waterhouse account throughout the lifetime of the T.D. Waterhouse account.

Upon consideration of the established record, the Debtors' contentions are well-premised and supported by the record. After review of the stipulated facts, the Court agrees with the Debtors' categorization of the insurance proceeds received by the Debtor, Shah Alam. Debtors contend that the lawsuit settlement award is akin to benefits being paid under a policy of sickness and accident insurance and the proceeds used to purchase the Fidelity Account were such funds and were not commingled with other property of the Debtor. It is clear from the stipulated facts that, although the funds went through a series of investments there is no indication that the residual amount is nothing more than the remnants of the original net proceeds. Further, as Joint Stipulation number 3 indicates, these funds came from Debtor's disability carrier. Since the funds could be traced to the disability proceeds, the debtor is properly able to exempt them pursuant to the aforesaid exemption provisions.

The Joint Stipulations show that the invested funds were the same funds received by co-Debtor Shah Alam from the subject settlement award. No evidence was adduced by the Trustee to demonstrate a different finding. The burden of proof to maintain the objection is reposed in the Trustee who has failed to meet his

burden of proof. Although the deposited funds and the subject exemption claim are less that the Debtor's net settlement award, it nevertheless is unrefuted by any persuasive evidence that the flow of funds invested in the various accounts and the investment vehicles all emanated from the original net settlement awards.

### Conclusion

Accordingly, the Trustee's objection is hereby overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.

### JUDGMENT

At Cleveland, in said District, on this *7th* day of December, 2005.

A Memorandum Of Opinion And Order having been rendered by the Court in this matter,

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Chapter 7 Trustee's objection is hereby overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.